FRANKLIN HAVEN & another *vs.* GRAND JUNCTION RAILROAD & DEPOT COMPANY & others.

If an absolute judgment of foreclosure of a mortgage given to trustees has been rendered, and the mortgagees thereupon bring a suit in equity for the purpose of having their title declared valid, and of obtaining authority to sell the premises for the benefit of the *cestuis que trust,* the mortgagors and their privies in estate cannot be heard to object that the mortgage was not properly sealed, or that on a true construction of its terms an absolute judgment of foreclosure should not have been entered. And in such suit the mortgagees may have a decree declaring their rights as against all parties claiming under the mortgagors by titles acquired subsequently to the mortgage.

BILL IN EQUITY brought by the plaintiffs as trustees under a first mortgage executed to them on the 1st of July 1860 by the Grand Junction Railroad and Depot Company, to secure bonds

to the amount of $350,000, payable in twenty years, with inter-est warrants or coupons payable on the first days of January and July in each year, praying that they might be authorized to sell the premises, and that the court would make such orders and decrees that the purchaser might obtain a clear title thereto.

The following facts were agreed, with others not now mate-rial : The mortgage referred to contained the following provi-sion : " And it is hereby mutually agreed, and these presents are upon this express condition, that upon payment of the principal and interest of all said bonds the estate hereby granted shall be void, and the estate, rights and powers hereby granted shall revert to and revest in said party of the first part, without any acknowledgment of satisfaction, reconveyance or reëntry, or other act, notwithstanding such payment may be made after a breach of the condition of said bonds, and whether such pay-ment be made by said party of the first part or by the interven-tion of the trustees, under the provisions of this indenture." Other provisions of the mortgage are recited in 4 Allen, 81–83, and 8 Allen, 360.

Three hundred and fifty bonds, for one thousand dollars each, were issued under the above mortgage, of which two hun-dred and forty-four are now held by the Boston and Worcester Railroad Corporation, about sixty by John M. Pinkerton and other persons represented by him, and the remainder in small amounts by persons, most of whom are unknown to the parties to this agreement.

On the 1st of July 1853 the mortgagors leased a portion of the mortgaged premises to the Boston and Worcester Railroad Corporation. On the 21st of December 1853 the mortgagors executed a second mortgage of the whole of the mortgaged premises to Thomas Hopkinson, now deceased, William Whit-ing and Isaac Livermore, as trustees, to secure the payment of four hundred and fifty bonds for one thousand dollars each, pay-able in fifteen years, with interest payable semi-annually. The interest on these second mortgage bonds being unpaid, Whiting and Livermore, as surviving trustees, on the 9th of March 1857 entered upon the premises for the purpose of foreclosure, and

retained possession of the whole, taking the rents and profits, until the 26th of August 1858, when the Boston and Worcester Railroad Corporation took possession of the portion leased to them; and thereafter of the residue until July 22d 1859. The European Wharf Company became owners of a majority of the second mortgage bonds.

On the 11th of April 1857, the interest on the first mortgage bonds being unpaid, the plaintiffs brought a suit against the mortgagors, and Whiting and Livermore, to foreclose the mortgage; and conditional judgment was rendered, and execution issued upon which the plaintiffs were put in possession on the 22d of July 1859.

On the 1st of May 1858, pending the suit to foreclose the first mortgage, the mortgagors executed a lease of a portion of the mortgaged premises to Nathaniel Adams and Jonas Fitch.

On the 21st of July 1862 the Boston and Worcester Railroad Corporation brought a bill in equity against the plaintiffs to redeem the premises from the first mortgage, and a decree was entered therein on the 22d day of October 1864 that the bill should be dismissed unless said corporation should pay to the plaintiffs the sum of $173,250 within sixty days. That sum was not paid, and the bill was dismissed.

Certain other material matters are set forth in the opinion.

The case was reserved by *Hoar*, J., for the determination of the whole court.

Subsequently the counsel for the Grand Junction Railroad and Depot Company moved that the agreed statement of facts might be discharged, or else amended by adding that there was upon the mortgage the impression of the seal of the corporation upon the paper, without any wax, wafer or other substance being used in connection therewith, said impression being made at the time of the execution of the instrument, and there being nothing except said impression purporting to be the seal of the corporation.

The question of the allowance of this amendment, and the effect thereof, if allowed, were reserved to be heard at the argu-ment of the cause upon the agreed statement.

*S. Bartlett & G. G. Hubbard,* for the plaintiffs.

*J. G. Abbott & B. Dean,* for the Grand Junction Railroad & Depot Co., and the European Wharf Co.

*G. S. Hale,* for the Boston & Worcester Railroad Corporation

*J. M. Pinkerton,* for himself and other bondholders.

CHAPMAN, J.    It appears by the agreed statement of facts that the plaintiffs claim title to the premises described in their bill by virtue of a mortgage dated July 1, 1850.   On the 11th of April 1857 they commenced a suit to foreclose this mortgage, and obtained a judgment of foreclosure, and received possession under a writ of *habere facias* issued upon the judgment July 22, 1859.   A construction was given to the mortgage in 4 Allen, 80. A motion is now made by the defendants that the agreed statement of facts be discharged, on the ground that the defendants have lately discovered that the mortgage had no valid seal.   But if this motion were granted, it would be of no avail to the defendants.   The plaintiffs' title now rests upon their judgment of foreclosure.   The mortgage is merely the instrument of evidence by which that judgment was obtained; and if the defendants could now invalidate the mortgage as evidence, the validity of the judgment would yet remain, and the plaintiffs' title would be unaffected.   The motion must therefore be denied.

It is contended that by one of the stipulations of the mortgage, the foreclosure is not to be absolute, but is to remain open, so that, by paying the interest due, the mortgagors and their assigns are entitled to the property.   It is not necessary to discuss the construction which is to be given to that clause.   The effect of the judgment of foreclosure is determined by statute. Rev. Sts. *c.* 107, § 1.   Gen. Sts. *c.* 140, § 1.   After three years' peaceable possession under the judgment, the right of redemption was thereby forever foreclosed.   Whether it would have been consistent with the policy of the law to permit a modified judgment to be rendered, need not be discussed.

It is elementary law that the judgment of foreclosure was binding on privies as well as parties.   Those of the defendants, who held their title under the mortgagors, subject to the mortgage, were bound as privies, and as to them as well as the

mortgagors the foreclosure has been perfected for several years, and the title of the plaintiffs is absolute. The plaintiffs hold this absolute title in trust for the bondholders and for no other parties, and are to dispose of the property for the sole benefit of their *cestuis que trust.* It is to be applied at its value in payment of the bonds *pro rata. Hedge* v. *Holmes,* 10 Pick. 380. As the Grand Junction Railroad & Depot Company, the Boston & Worcester Railroad Corporation, the European Wharf Company, and the defendants Whiting, Livermore, Adams and Fitch, claim rights in the premises inconsistent with this absolute title of the plaintiffs as trustees of the bondholders, the plaintiffs are entitled to a decree against them declaring the rights of the parties.

Under Gen. Sts. *c.* 100, § 16, the court has power to decree a sale and conveyance of the property, and the investment, reinvestment and application of the proceeds of the sale, when it shall appear to be necessary or expedient. The property consists of a railroad, depot grounds, buildings, wharves and docks, and the bill alleges that the wharves are out of repair, and continually require the expenditure of large sums of money for repairs; that the docks have become more or less filled up with mud, and require to be dredged out at a large expense; that there are upon the premises large stone, brick and slated buildings used as government storehouses for the storage of free goods, and other buildings leased by the plaintiffs for various purposes; that large repairs and improvements must be made beyond the net annual income, and, if they are not made, the premises will depreciate in value. There were three hundred and fifty bonds of one thousand dollars each, having coupons attached for semi-annual interest, secured by the mortgage. The Boston & Worcester Railroad Corporation have become holders of two hundred and forty-four of these bonds; the defendant Pinkerton, and others whom he represents, hold about sixty of them; and the remainder are held by parties not represented here, and mostly unknown. The Boston & Worcester Railroad Corporation desire that the property may be sold in one lot to the highest bidder, and offer to become purchasers. They also

desire that the proceeds may be divided among the bondholders *pro rata.* Pinkerton and others oppose the sale because they contend that they are not obliged to receive their money until it shall become due, and they believe the property will greatly increase in value by being kept till the principal becomes due. But if it is now to be sold, they further contend that it should be sold in separate parcels, so that they may be able to compete with the Boston & Worcester Railroad Corporation in bidding for some portions of it. If it is sold in a single parcel, they say the Boston & Worcester Railroad Corporation, being a large corporation and owning so many of the bonds, will be enabled to obtain it without competition and for an inadequate price.

As to these points of difference between the *cestuis que trust,* the facts are not agreed, and it is necessary to refer the cause to a master in order that they may be ascertained, and that the rights of the weaker as well as the stronger party may be properly protected. In the mean time the cause must stand for further directions, and on the coming in of the master's report such decree may be made as equity and justice shall require.